# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

MARIO A.R..,[1]

       Plaintiff,

   v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

       Defendant.

Case No. 2:25-cv-04391-BFM

**MEMORANDUM OPINION AND ORDER**

This case is before the Court for review of the decision of the Administrative Law Judge denying Plaintiff's applications for Social Security benefits. For the reasons discussed below, Plaintiff's request for remand (ECF 11) is granted and the decision of the Commissioner is reversed.

---

[1]  In the interest of privacy, this Order uses only the first name and middle and last initials of the non-governmental party in this case.

[2]  Frank Bisignano became the Commissioner of Social Security in May 2025 and is substituted as Defendant here pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.    PROCEDURAL HISTORY

This case stems from two social security applications. In August 2019, Plaintiff applied for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. (AR 234-45.) Plaintiff alleged a disability onset date of May 2, 2018. (AR 234-45.) Plaintiff's application was denied at the initial level of review and on reconsideration, after which he requested a hearing before an Administrative Law Judge. (AR 62-109.) Following a hearing (AR 38-56), ALJ Michael Radinsky issued an unfavorable decision finding that Plaintiff was not disabled. (AR 15-32.) The Appeals Council denied review of the ALJ's decision. (AR 1-8.) Plaintiff disagreed with the Appeals Council's denial and appealed to the United States District Court for the Central District of California, which remanded the case for further proceedings. (AR 804-24.)

In April 2022, while that appeal was pending, Plaintiff filed a second application for supplemental security income. The case was assigned to ALJ Evelyn M. Gunn, who consolidated Plaintiff's new application with the remanded case and held additional hearings. (AR 713, AR 735-72.) After those hearings, ALJ Gunn issued an unfavorable decision finding that Plaintiff was not disabled between May 2, 2018, and April 7, 2022. (AR 724-25.)[3]

Dissatisfied with the Social Security Administration's resolution of his claim, Plaintiff again sought review in this Court. (ECF 1.) For the reasons set forth below, the Court reverses the Commissioner's decision.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.

---

[3] ALJ Gunn left intact an agency determination that Plaintiff was disabled from April 8, 2022, onward. (AR 713.)

*See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

## III. DISCUSSION

Plaintiff argues that the ALJ failed to develop the record as to Plaintiff's intellectual functioning, and that as a result, the ALJ's step three and step five analysis are incomplete. (Pl. Brief at 4-9, Reply at 2-6.[4]) The Court agrees that the ALJ's decision should be reversed on this basis.

### A. Forfeiture[5]

As an initial matter, Plaintiff's counsel did not ask for the ALJ to take steps to further develop the record with respect to intellectual disability, nor did counsel ask for the chance to supplement the record himself. Defendant argues that Plaintiff therefore forfeited any question about the ALJ's analysis of that issue. (Def. Br. at 5.) Plaintiff argues, however, that even if counsel did not raise

---

[4] For ease of reference, the Court refers to ECF-generated page numbers for electronically filed documents other than the Administrative Record.

[5] The parties frame this as a waiver argument, but the Court uses forfeiture, in line with Ninth Circuit caselaw holding that forfeiture describes the case when a litigant fails to timely assert a claim, and that waiver occurs only when a litigant intentionally relinquishes a known claim. *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc). Plaintiff did nothing to affirmatively waive review of the claim he makes here; at most, he forfeited such review.

3

any issue with respect to intellectual functioning at the hearing, the ALJ had the obligation to fully develop the record, and that that duty includes the obligation to address this question without being prompted to do so by counsel. (Reply at 5.) The Court declines to deem the issue forfeited.

Defendant cites *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), in support of his argument that Plaintiff forfeited his claim by failing to raise it at the administrative hearing. (Def. Br. at 5.) There is much water under the bridge, however, since *Meanel* was decided. *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 110-12 (2000) (finding that, because Social Security proceedings are inquisitorial and not adversarial, and because the ALJ has a duty to investigate facts and develop arguments, issues not raised before the Appeals Council are nonetheless preserved for judicial review); *Carr v. Saul*, 593 U.S. 83, 89-96 (2021) (holding that, while ALJ proceedings are more adversarial than Appeals Council review, objections not raised to the ALJ are not necessarily barred from federal court review).

In a recent decision, the Ninth Circuit synthesized *Sims* and *Carr* and set out a two-part test for determining whether "to impose a judicially created issue-exhaustion requirement." *Obrien v. Bisignano*, 142 F.4th 687, 697-98 (9th Cir. 2025) (quoting *Carr*, 593 U.S. at 88, internal quotation marks omitted). Under *Obrien*, a court (1) "must first identify the relevant 'issues' raised by [a claimant]," then (2) "determine whether, notwithstanding the generally informal and inquisitorial nature of ALJ proceedings, those issues are the sort that claimants are 'expected to develop' in those proceedings, such that requiring issue exhaustion is appropriate.'" *Id.* (quoting *Carr*, 593 U.S. at 89 n.3). The issue in *Obrien* was whether the ALJ properly concluded that the claimant's prior employment qualified as "past relevant work" under applicable regulations. The Ninth Circuit found that issue was not forfeited by the failure to raise it before the agency. Whether a job is past relevant work is "not some

4

extraneous or additional issue that, if not specifically called to the ALJ's attention, the ALJ would have no occasion to decide." *Id.* at 698. Nor did the issue concern the presentation of new evidence or information that the claimant bore "some measure of responsibility to develop." *Id.* at 699 (citation and internal quotations omitted). Rather, deciding whether a claimant's prior employment meets the standard for "prior relevant work" is an issue that is "inherent in the five-step process," and thus related "more to the inquisitorial aspects of those proceedings." *Id.*

Applying *Obrien* here, the Court declines to find forfeiture. A claimant bears the burden of proving disability, *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996), but the ALJ "always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. . . even when the claimant is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). An ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Celaya*, 332 F.3d at 1183 (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). Courts have found that that, in some circumstances, that duty includes an obligation to probe evidence of low IQ scores in the record. *See Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1056 (C.D. Cal. 2010) (ALJ's "silent disregard of the verbal IQ obtained by [consultative examiner] was error"); *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008) (remanding where it was unclear whether the ALJ addressed IQ scores in step three analysis).

The parties' substantive dispute here is whether the mention of the low IQ score in the state agency redetermination decision triggered the ALJ's duty to develop the record regarding intellectual disability. The forfeiture question and the merits thus collapse into each other: if there was enough ambiguity in the record to trigger the ALJ's duty to inquire further, then she had an

obligation to do so sua sponte, without waiting for counsel to ask. The Court thus proceeds to the merits of that question.

### B.    Legal Framework

As just stated, an ALJ has "a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). That duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459-60; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty."). Evidence is "insufficient when it does not contain all the information [the agency] need[s] to make [its] determination or decision." 20 C.F.R. 416.920b(b). When confronted with ambiguity, the ALJ may discharge her obligation to develop the record in different ways, including by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan,* 242 F.3d at 1150.

### C.    Analysis

At step two of her analysis, the ALJ considered whether Plaintiff's anxiety or history of substantive abuse were severe mental impairments, and concluded they were not. (AR 717.) To reach that conclusion, she evaluated the record concerning each of the four "Paragraph B" functional areas. (AR 717-18.) First, the ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information, noting that treatment providers had no concerns relating to Plaintiff's memory or his ability to consent to treatment. (AR 717.) Second, the ALJ wrote that Plaintiff had no limitation in interacting with others, as he routinely presented as cooperative. (AR 717 (citing AR 389 (March

2019 emergency department report noting "Cooperative, appropriate mood & affect"); AR 476 (February 2020 emergency department report noting "Cooperative, appropriate mood & affect"); AR 703 (September 2020 report noting "Cooperative" in psychological findings"); AR 1304 (February 2023 internal medicine evaluation report noting Plaintiff "was cooperative throughout the examination").) Third, the ALJ noted that Plaintiff had no limitation in concentrating, persisting, or maintaining pace, as the record demonstrated that he was alert and oriented, provided his medical history to treatment providers, and clinicians did not mention any concern about his pace. (AR 718.) Fourth, the ALJ found that Plaintiff had no limitations in adapting or managing himself, based upon the record and Plaintiff's ability to seek medical treatment. (AR 718.) At a later stage in the analysis, the ALJ assessed an RFC that included no mental or task complexity limitations. (AR 719-22.)

Unmentioned in the ALJ's analysis is a note in the state agency evaluation on redetermination, which references IQ testing scores from March 2010. The note reads: "WRAT4: reading 68, math 73. WAISIV: VC 72, PR 67, GA 67."[6] (AR 856.) The same reference also notes that "Cl was referred to Regional Center by the public school system due to the continuing suspicions regarding the possible presence of developmental delays. He is in 10th grade and in SPED for SLD. Dx: Mixed receptive expressive language d/o; Anx d/o NOS; Mild MR; h/o Sz d/o." (AR 856.) An overall score of 67 typically indicates a

---

[6] "WAISIV" appears to be a reference to the Wechsler Adult Intelligence Scale—Fourth Edition, which "measures intelligence in adults and older adolescents" and "provides scores of an examinee's verbal comprehension, perceptual reasoning, working memory, and processing speed as well as his overall IQ and an index of his general ability." *Avila v. Berryhill*, No. EDCV 17-1440-JPR, 2018 WL 4770733, at *6 n. 9 (C.D. Cal. Oct. 1, 2018), *judgment entered*, No. EDCV 17-1440-JPR, 2018 WL 4773240 (C.D. Cal. Oct. 1, 2018) (citations omitted). "GA" appears to refer to a "General Ability" score.

claimant is in the "extremely low" range of intellectual functioning. *See, e.g., Branch v. Berryhill*, No. 19-cv-02996-RMI, 2020 WL 4193375, at \*5 (N.D. Cal. July 21, 2020) ("Upon administering the WAIS-IV, Dr. Catlin measured Plaintiff's full scale IQ score at 67, meaning that his overall thinking and reasoning abilities were in the extremely low range, or, at the bottom 1% of all individuals his age"); *Jeffrey M. N. v. Saul*, No. 20-cv-01155-RMI, 2021 WL 1022876, at \*3 (N.D. Cal. Mar. 17, 2021). The ALJ did not reference this portion of the state agency reconsideration decision.

The IQ test raises a significant question about the ALJ's finding that Plaintiff had no limitations in mental or intellectual functioning. Courts have frequently reversed for failure to address IQ scores in the record. *See, e.g., Halyday v. Colvin*, No. 2:12-cv-01761 KJN, 2013 WL 4678791, at \*4-5 (E.D. Cal. Aug. 30, 2013) (finding reversible error where "the ALJ never mentioned the evidence of plaintiff's IQ scores, let alone discussed whether or why those scores might be invalid" and instead "conclusorily found only that plaintiff 'does not have a valid verbal, performance, or full scale IQ score'"); *Garcia v. Comm'r of Soc. Sec.*, 768 F. 3d 925 (9th Cir. 2014) (finding ALJ did not discharge duty to fairly develop the record where he moved forward based on a partial IQ test in the record instead of ordering a full IQ score; IQ testing "plays a particularly important role in assessing the existence of intellectual disability"); *Thresher*, 283 F. App'x at 475.

Here, the evidence in the record was concerning but ambiguous: the actual record of testing was not before the ALJ, only a description of the record. The description of the record suggests the potential of severe intellectual disability, but does not provide enough information to evaluate the validity of the test. Under these circumstances, the ALJ's duty to further develop the record was triggered. But the ALJ did not request records of the earlier IQ testing or submit questions to physicians regarding Plaintiff's intellectual functioning. And while

8

she left the record open for a brief period after the hearing (AR 757-58), she did so only to permit submission of records from Martin Luther King Hospital, not from the clinic that reported the IQ test. (AR 757-58.) Instead, it appears the ALJ simply overlooked the low IQ score and thus failed to discharge her duty to develop the record. *Tonapetyan,* 242 F.3d at 1150. This was error.

Defendant's arguments supporting affirmance are not persuasive. Defendant points to questions about the probative value of the IQ test: uncertainty about how the IQ test was administered; inconsistency between Plaintiff's age (32 years old) at the time of the scores and the record's statement that he was in the 10th grade; and the fact that Plaintiff was working as a forklift driver at the time of the scores. (Def. Brief at 6.) To be sure, further development of the record by the ALJ might show the test scores to be invalid or suggest the error was harmless. But those are the ALJ's calls to make, not this Court's. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ— not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). As to the dated nature of the test, courts have recognized that IQ scores generally remain stable over time. *See Holt v. Berryhill*, 274 F. Supp. 3d 1187, 1197 (W.D. Wash. 2017) (collecting cases). As it stands, the Court cannot rule out that the failure to develop the record affected the ALJ's decision.

Defendant also contends that, instead of relying on a vague medical record that predates the relevant disability period, the Court should instead look to other evidence in the record. Defendant cites a September 2019 consultative examination report and March 2024 consultative psychological examination report. (Def. Brief at 7.) But the September 2019 consultative examination report focuses on Plaintiff's physical impairments, not mental or intellectual functioning. (*See* AR 457-61.) And while the March 2024 psychological

consultative examination does not reflect a diagnosis of intellectual disability, the examiner's findings are mixed. (AR 1497-98 (Plaintiff could complete serial threes but not serial sevens; could spell the word "world" or "mundo" forward but not backward; and could not name two past Presidents of the United States, identify the current President, or identify the capitals of the United States or California).) Put together with the IQ test, and the note regarding referral to the Regional Center, there is enough to say that the ALJ should have dug deeper into the question. Other psychological findings in the record only note that Plaintiff was "cooperative" (AR 389, 476, 703, 1304), but being "cooperative" does not exclude deficits in intellectual functioning.

Defendant further contends that any error is harmless, because the ALJ's hypothetical included Plaintiff's age, limited education, and RFC limitations. (Def. Brief at 7-8.) But the ALJ's failure to develop the record could have impacted whether the RFC was accurate. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (finding substantial evidence did not support step five determination "since it was based on [an] erroneous RFC assessment"). The same is true of the ALJ's finding that Plaintiff could perform a job requiring reasoning level 3 or language level 2 work that this position required. (Def. Brief at 8.) The ALJ's failure to develop the record casts doubt on her findings with respect to Plaintiff's reasoning and language capacities. Defendant's arguments that the step five determinations were unaffected by the failure to develop the record are therefore unavailing.

## IV.    REMEDY

Plaintiff requests remand this case for further proceedings to develop the record regarding Plaintiff's intellectual functioning and disability. (Pl. Brief at 9.) Remand is appropriate as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes

that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V.    CONCLUSION AND ORDER

For the reasons above, it is therefore ordered that: (1) Plaintiff's request for remand (ECF 11) is **granted**; and (2) the decision of the Commissioner is **reversed** and this matter is **remanded** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative for further administrative proceedings consistent with this Opinion and Order.

DATED: March 24, 2026          _____

HON. BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

11